Good morning, Your Honors. May it please the Court, my name is Devlin Geddes. I represent the appellants in this case, Joe Mulroy and Yorlam Ranch, which is Mulroy spelled backwards. I would like to reserve three to four minutes for rebuttal. I see that my clock actually isn't moving here, but I'm buying myself time. I will watch my time to make sure I have enough left. The District Court mistakenly determined in this case that the beetle infestation in Mulroy's log home was caused solely by Kimes' work. Based upon that factual conclusion, the Court concluded that coverage under the Your Work exclusion in Northland's policy prevented coverage. Let me ask you one question about the contract. The policy defines Your Work to cover both labor and materials. I'm looking at ER 157, where it says it defines it to include, number one, work or operations performed by you or on your behalf, and number two, and I'll skip some irrelevant words, but materials furnished in connection with such work. Understood. So why aren't the logs materials furnished in connection with Kimes' work on the house? Your Honor, that relates to the subcontractor exception to the Your Work exclusion. Okay, so it all rises or falls on concluding that the supplier of the logs was a subcontractor. Otherwise, the District Court was right. Two points, Your Honor. One, the District Court didn't say that the materials were, in fact, Kimes' materials. The materials did come from the subcontractor. It doesn't say that. It says materials furnished in connection. It doesn't say your materials. Your Honor, this case does rise and fall on the application of the subcontractor exception. Okay, let's go there, because it seems to me that the minimal processing of these logs isn't really different in kind from what any other supplier of things would do. If I ordered light bulbs, somebody would have to make sure that they're the right size, dust them off, count them, make sure they're not broken, you know, maybe look at the sockets, make sure it's going to fit, that sort of minimal processing. And I don't see anything more than that occurring here. The difference here, Your Honor, is Mr. Downing, the subcontractor who is now deceased, he actually went out into a forest in Montana and found logs that would work for this particular project, cuts them down, and then washes them, cuts them to length, and delivers them to the project. Well, counsel, I thought about that, too, but then I'm right back at Judge Graber's point. What's the difference between that and a subcontractor, if this is a large building, going to, say, someone who is going to be refurbishing this Nakamura Courthouse, and because it's such an old building, they can't find specific glass to fit the windows, and they can't find other materials, and so they go out to a materials supplier and say, this is what we need, and that materials supplier goes out and gets somebody to fabricate them. Are they then subcontractors? It depends on the extent of the involvement of the subcontractor. No, I just gave you the facts. The facts are there. Are those people subcontractors? If there are specifications as to the windows that need to be replaced. My understanding on the case floor is they may be, but let me change the hypothetical. Suppose what they did is they went to this person that Judge Ezra is describing, and they said, this is what we need. Would you go around to a bunch of junkyards and salvage places and find them for us? Yes. That's what he did here. It is similar to what he did here. But is that a subcontractor when he's not making anything? He's just going around and finding something? Yes, ma'am. If the contractor gives some specification as to, I need you to find items X, Y, and Z, and they are tasking that particular subcontractor. I want to buy this from you. Here's what I want to buy. If you bring it to me, I'll buy it. The cases that deal with subcontractors recognize that there is some push and pull. There's a continuum, but basically the idea that you have to go find the right item doesn't seem to me to make someone a subcontractor. If I have weird light bulbs in my example, they might have to go to three warehouses to find the right light bulbs, but it doesn't make the light bulb seller to me a subcontractor. There's a case that I cited, I think it's Mosser, where the court held that a gravel supplier was a subcontractor, that the contractor said we need a particular type of gravel for this project, and the gravel supplier digs up the gravel, washes it, sends it on a truck to the project, and the structure ended up failing. This is an unpublished Sixth Circuit case. When you make gravel, you just dig it up? I'm sorry, what was it? When you supply gravel, the gravel is in the ground the way as gravel, or you get a bunch of stones and you crush them? In that particular case, the fabrication of the gravel was not described in that case. What we do know is that the gravel was on site. It was prepared. They had excess material. The contractor ordered gravel. The gravel was delivered to the project. The gravel ended up being failing on the project. I mean, that strikes me as crazy. Well, actually, Mosser, that's the unpublished decision from the Sixth Circuit that you're referring to, and Gerken says, Gerken qualifies as a subcontractor. Gerken manufactured the number 57 coarse aggregate, and the question there was where they did a manufacturing process. So the issue was whether the fact that they did it on their own property and had already done it made it not a subcontractor, but that isn't really our issue. It isn't location, that's the question. It's the extent of whether, you know, the extent of the work, and obviously that case is not binding either. Our point here is that the extent of the work is a material factual dispute that needs to be decided in the case below. I thought there was no dispute as to what occurred. They went out and found the logs. They cut them to measure. They washed them, and they delivered them. That is true. Okay, so there's no dispute about what happened. The question is what does it mean? Well, the one issue that hasn't been decided here, and there's no dispute. He went out and selected the logs. He brought them back to his site. He washed them. He cut them, and then the subcontractor delivered them to the actual home construction site. Okay, so there's not a factual issue. Mr. Downing, as the subcontractor, was the person who actually went out into the forest and selected the logs, and he chose logs that were infested with beetles. He could have chosen 150 logs that were not infested. That doesn't relate to whether he's a subcontractor. My lightbulb guy who just sells lightbulbs could have given me defective lightbulbs, and that's why the definition of your work matters, because if I'm the contractor and I put in defective materials furnished in connection with my work, I'm the one who's responsible, not the lightbulb seller. So the fact that they may be defective doesn't really advance whether there's a subcontractor. That's circular. It's like, well, if there's a problem, I win. You know, so I don't understand why that even matters to the subcontractor conversation. Your Honor, you are correct that the your work exclusion applies to the work materials supplied by the contractor. That's not what it says. It says materials furnished in connection with the work. It doesn't say supplied by you. It says furnished in connection with the work. But regardless, it seems to me that regardless of how we get there analytically, the question is whether this is a subcontractor or not. And I guess all I'm saying is I don't see a factual dispute about what actually occurred as distinct from a dispute over what significance it has. Your Honor, there is a factual dispute as to what Mr. Downing actually did and whether he complied with the standard of care in the industry when he went out and selected logs that had powder post beetles found in them. I'm having a hard time seeing what difference there would have been. It's not actually what he did. It's what he didn't do. What he didn't do was pressure treat the wood or make sure that the wood was pressure treated. I don't see that there's a huge difference between Mr. Downing going out like some kid looking for a Christmas tree and pick trees out of the forest or Mr. Downing going to a lumber yard somewhere and finding logs or going to another supplier and finding logs and purchasing them. What he didn't do is ensure that the logs were pressure treated. Well, as Mr. Kime testified, he's been building log homes in Montana for over 20 years and has never in his experience ran into powder post beetles. And he had never treated any logs in any of the homes that he had ever constructed prior to then. And he's no longer in the suit, right? There's been a settlement with him. There was a confession of judgment by Kime. I have a slightly different language question about the policy. Before you even get to the subcontractor question, the work has to have been done on behalf of the general contractor. Again, I don't understand how if you go out and buy something. If I buy something from a store, they're not selling it to me on my behalf. They're selling it to me because they're in business and they're selling me something. And that seems quite different from if I have a project and I've contracted to do the electoral work and then I go find you and I say, you do the electrical work for me. The on behalf language doesn't seem to fit here either. So in Montana, the general contractor is responsible for constructing the home in a good and workmanlike manner regardless of whether he has a subcontractor do that work or whether he does the work himself. Here, one of the elements that Mr. Kime signed up to do for Mr. Molroy was to bring logs to the place and then peel them, notch them, and set them into the house. Right. And so Kime is responsible for that, and he's out of the lawsuit because he's paid up. So now the question is, is the seller of the logs also responsible, right? Did he do anything on behalf of Mr. Kime? I don't think Kime's actually paid up. What he did was he just confessed judgment. Judgment. Okay, excuse me. That's fair enough. He probably didn't have anything, and so he confessed aside his cause of action. Fair enough. Kime confessed judgment because he had nothing and he had an insurance policy. We see this in personal injury cases. Absolutely. And Kime confessed judgment that he was negligent in the construction of the home. Okay. Fair enough. The other problem is that nothing in the underlying lawsuit concerned whether the seller of the logs, Downey, was negligent. I mean, we have no idea whether it—because the whole claim was that Kime should have put pesticides on these logs. And there's no really allegation even that selling somebody logs with bugs in them is negligent or bad or anything else. I mean, the understanding seems—and it isn't necessarily. I mean, it could be, for all I know, that I understand that Kime says he never saw these bugs. But there was also testimony that the standard of care is you put pesticides on logs before you put them in a house. And that was what the case was about. The case wasn't about whether the bugs should have been there or shouldn't have been there. Your Honor, account one of the underlying complaint at the state court level alleged generally against Kime that he violated the standard of care in Montana, which includes the obligation to construct the home in a good and workmanlike manner. Right. Kime is responsible for his contact and all of the conduct of his subcontractors under Montana law, period. And material suppliers. And material suppliers. If—when Mr. Molroy sues Kime, he doesn't also have to go sue everyone else who messed up on the project in Montana. That's not his obligation. His obligation is to sue Kime. If Kime wants to bring in, as a third-party defendant, a subcontractor who messed up, Kime has the ability to do that. Rather than doing that— No, but that isn't the question. The question is, what was the mess-up? Was the mess-up buying logs that had bugs or not putting on the pesticides? That's exactly the question that hasn't been answered, and that's the reason why— But what was the allegation in the underlying complaint? The allegation in the underlying complaint simply was that Kime failed to meet the standard of care, which was to construct the home in a good and workmanlike manner. There was a factual allegation in the complaint that he should have treated the timber. There's no doubt about that. Right. And then on the confession of judgment, the court concluded, Kime, you were negligent. You did not construct the home in a good and workmanlike manner. Now, there was a factual finding— So if he had treated the logs, presumably none of the rest of this would matter. If he would have treated the logs, none of it would have mattered. It would have stopped it. But one of the things that Kime was responsible for also was selecting the correct logs in the first place. But you're—I mean, there was nothing in the underlying lawsuit that suggested that the selection of the logs was the problem. But the judgment actually that resulted in the final judgment against Kime, the reason why we're here on the insurance policy, the court concluded, the insects were in the timber when harvested, when it was delivered, and when construction occurred. So we have a factual finding in the confession of judgment, as a result of the confession of judgment, that the bugs were in the logs. Well, of course they were, but that doesn't say where the negligence lay, whether it was in the failure to treat, which is— If we don't know where the negligence lies, you can't exclude coverage. You have to have a factual determination. Right, if it's a subcontractor and not merely purchased materials. True, and Mr. Kime relied upon Mr. Downing to go out into that forest and pick those logs for him. He could have done that himself, but he didn't. He had a subcontractor do that. We understand your position. You've exceeded your time, but you may have one minute for rebuttal. Thank you. May it please the Court, I'm Marshall Mickelson on behalf of Northland Casualty Company. Judge Christensen found that the damages in the state court judgment were not covered by the Northland policy because of the your work exclusion. And he found that the subcontractor exception to the exclusion never applied because this was the work of Mr. Kime. And there's no question that when you look at the record underlying this case is that we have a complaint that although the— Mr. Mulroy wants to try and narrow what that complaint says. As this Court pointed out, there is no allegation of any other sort of negligence in that complaint other than that he anticipated that the defendants could construct the structure pursuant to applicable industry standards and that the industry standard was to treat the logs with pesticides before— Is that in the complaint? Yes, Your Honor. So it's— He said something like plaintiffs thought he would treat the logs, something like that. Pardon? He said something like plaintiffs expected him to treat the logs. The specific allegation is that— On ER 23, you're looking at paragraphs 15 through 19. Yes, Your Honor. Plaintiffs subsequently learned that the logs used in the construction of the homes were infected with beetle. Reasonable and prudent standards in the construction of log homes include the chemical treatment of logs for beetle larva and insects prior to installations. They failed to advise the plaintiff of this standard treatment and failed to apply it. They used untreated logs, and the failure to use treated logs caused the plaintiff's damage. And on ER 24 is the more general. The defendants represented that the home would be built to industry standards but then goes on to say they should have known that untreated logs would result in damage, and they knew that the logs were untreated. And misrepresentations are also defined under the policy as part of your work. And so all of the allegations in the complaint involve the failure to treat the logs. There is no allegation as to any other liability on the part of CHIME. It was all in failure to treat the logs. Then what's important is you go to the next step. There was a settlement agreement entered into this case, and in that settlement agreement, the claims that were assigned under the policy were those claims that arose out of the omissions and failures as alleged in this lawsuit. So the only claims that were assigned were those that were part of the lawsuit at the time of the confession of negligence, and the confession of negligence was based on this complaint. Then you go, so there's three keys here. There's the complaint, there's the confession of judgment, where the claims are only assigned based upon that complaint, and then the findings of fact of the state district court, where the state district court found that the damages would not have occurred but for the failure to treat the logs. Well, it wouldn't have occurred but for the bugs either, so... was part of the process in building the house. So is it your position that the plaintiff in the suit below should have sued not only CHIME, but had some obligation if they wanted the policy to be, you know, to work for them, to sue the alleged subcontractor Donaldson directly? Or at least some allegation in the complaint because they confessed judgment based on this complaint. So they wouldn't necessarily need to include the other individual, but if they had said there's potentially two kinds of negligence, one is the selection of improper timber and the other is once you got the timber, you didn't treat it. Exactly, Your Honor. And that would have made the difference. And that's the answer to your question, Your Honor, is that had they alleged that we got defective logs from a log supplier and then they could argue that this was a subcontractor but I'm responsible for it, then maybe you have that issue in this case. But the issue isn't on this record. The issue isn't in this case. On this record, you have the complaint with those allegations, and it's true in Montana, it's notice pleading in state court, but this was a specific complaint with specific factual allegations. And in Montana, it is the admissions or the findings from if there are factual issues that give rise to a determination of coverage. That's State Farm versus Fryer. Here we have certain admissions by the parties with respect to their confession of judgment that it's these allegations that we are confessing judgment to and assigning to Mr. Mulroy to enforce against the insurance company. They didn't make any exceptions, and there's nothing else in here. On that approach, which was the approach of the district court, you don't get to the subcontractor question. Yes, Your Honor, you don't get to the subcontractor question because it didn't arise. There was no allegation of negligence with regard to anything the subcontractor did. That's the Detroit version. That's correct. It did not arise out of the work of the subcontractor. It arose out of the work of Mr. Kline. Well, it did. I mean, that's the problem. I think you have to stick to the complaint. It did arise out of what the subcontractor did, if he was a subcontractor, and that no bugs, no problem. So in that sense, it arose out of it, but it wasn't a negligent solution to the complaint. Correct, yes. And so then we'll turn to the issue of the subcontractor. And if you get there, the court has identified the problem completely, is that the courts that have analyzed what a subcontractor means and the subcontractor exception to the exclusion is that there must be a manufacturing And let's start with what a subcontractor is. But a subcontractor is, I have a contract. I'm going to turn some of that contract over to this guy to do. So I'm building a house. I hire an electrician. He comes in and does electrical work to build my house. But the cases do, and this surprised me, but they do reach, as I understand it, Judge Ezra's hypothetical. I built a new kitchen, and I hired a contractor, and we were going to have certain windows, and the contractor goes to a window maker and says, I want you to make, to my specifications, windows of a certain configuration with certain material. Even though it is simply buying some customized product, the cases seem to regard that as a subcontractor, even if the subcontractor never comes near the property. In this instance, he did come near the property. Is that true? Agreed, Your Honor. I mean, that seems a bit of a stretch to begin with, but that is how the cases are looking at it. Those cases that have decided or looked at that issue of a subcontractor have said, well, first of all, they say, if there's a specification in the contract between the owner and the general for a specified type of product, and then the general has to go out and hire someone to manufacture that for that specification in the contract, then they are, in fact, a subcontractor. That's what those cases have said, including the gravel, and I don't want to go outside the record, but I represent a concrete company, and you manufacture gravel because it has to be all the same size. Yeah, I think you're right there where I wanted to circle back, and that is a situation where we know, let's say we know, that if somebody had gone out and ordered like my earlier hypothetical or Judge Berzon's and make a window, they're going to possibly, potentially be a subcontractor. But the question is, now what your opposing counsel is saying is that you can't, and he can certainly correct me when he gets back up, but my understanding is that he's arguing that by going out into the forest and himself selecting the trees that he has done the legal equivalent of manufacturing. And, Your Honor, I guess I disagree with that. And then he cuts them, though, to size. He cuts them to size. He is not the nature manufacturers the logs. He goes out and gathers those logs. Well, I understand that. That's why I said he selects. I didn't say he grows them. He selects them based on size because that's what you're going to do. You have to have a certain diameter. You're going to have certain lengths. So he's selecting these logs. He washes them, and he delivers them to the site. What if he did grow them? Pardon? What if he did grow them? If he did grow them? Well, I still think that what he is is no really different than a supplier of light bulbs. It's like a nursery company sending trees to your landscaper. I don't know that that would be a subcontractor. I think they're a supplier because they grow the trees. The problem is this is all somewhat amorphous. I mean, it's a continuum, as Judge Graber said, and this one is a little closer to the manufacturer, if you think the manufacturer cases are right, than if you go to a lumberyard and say, you know, you have a bunch of stacked up 2x4s, and I want $6 and $7 and so on. I would argue, Your Honor, that it's actually. . . And give me some nice boards instead of ones with knots in them. I would argue it's actually different because you go to a lumberyard and they're cutting logs into certain sizes, 2x4s, lengths, grading that according to what type of lumber with the knots, how many knots. This is raw logs. Mr. Kine peeled and notched. . . He did the manufacturing to take these raw logs to build a home. He peeled the bark, notched the logs so they'd fit together to build the home. So I would argue that. . . The lumberyard, the manufacturing is all before the customer shows up. I mean, once the customer shows up, all they're doing is. . . At a lumberyard, you're saying. Buying what's already there, right? Yes, yes. But they do more. There's no specifications as to. They do more. I would argue that the log suppliers to the lumberyard aren't a subcontractor, and that's more analogous to the log suppliers here to Mr. Kine because it's raw logs and he's manufacturing those logs into a product that will build a house. And I also want to, as the court appropriately pointed out, there isn't an issue of fact here. In Montana, the interpretation of the insurance policy is a legal question. Here, Judge Christensen didn't get to that question, but there isn't a dispute of fact here that the log broker, Mr. Downing, cut the logs down. And I will say that there isn't actually any. . . And I haven't gone back and looked at the affidavit, but I'm not sure in the record it says that he actually went out into the forest and cut the trees. It may be in that affidavit. I don't remember, but I don't remember that particular fact in the record. Affidavit is Kine's affidavit. Kine's affidavit. I don't remember that that fact is that he actually went out into the forest and cut the trees. I think the record says that he supplied the logs according to size, washed them, and delivered them to the property. So this court, of course, can affirm Judge Christensen on any. . . It does not say that he cut them down. Okay. So I don't think that's in the record. Yeah. It says he provided him with specifications, the type of species of tree that he wanted. He processed the logs by washing, measuring, and sorting them by size. He selected and delivered the logs. I was not involved with that. I relied on him to process, select, and deliver consistent with the specifications. So I do not believe it's in the record that he actually went out into the forest and cut the logs, and they cut them in Montana or wherever he cut them. To refresh my recollection, but I don't believe the specifications talk about treating the logs, do they? No. The specifications in the contract don't talk about that. The complaint talks about that. Oh, I understand. The complaint talks about it, and I understand that the argument was that that's industry standard. And, of course, counsel says no. Right. In a self-serving post-deposition after the confession of judgment is when they say no. But that's true. The contract does not say that. So if the court goes to the subcontractor exclusion, that's a legal determination, and this court can affirm on any basis. I have a naive layperson question, which is only because this is the second calendar in which I've had a your work case. What do these policies cover? Well, they cover damage to other property. So if Mr. Keim or the subcontractor or anyone, if that log fell off of the house because of the bug problem and it hurt somebody or fell on somebody's car, that's what it covers because these are what are called the business risk exclusions. So insurance companies do not insure the risk that you're a good contractor. If you do defective work, we don't insure that. But if you do defective work that hurts somebody else, that is what we insure. There are policies that can be purchased at great cost that would do that. There are, and bonding is a type of – That would be a – yes. Yes. Performance bond. Yes. Performance bond, exactly. Correct. So I ask that the court affirm Judge Christensen's opinion. Thank you. Thank you. Mr. Gettis, you may have one minute for rebuttal. Thank you, Your Honor. In Montana, when a court examines coverage and an insurer is relying upon a complaint to limit that coverage, it is required the proper focus, according to the Montana Supreme Court, is the facts giving rise to coverage, not the language of the complaint. Moreover, it is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language. Paragraph 21 of the complaint alleges defendants owed a duty to perform construction services to a reasonable standard of care appropriate to construction industry and local standard of care for construction in Lincoln, Montana. We have not had that determination made. It's safe to presume that we need to put an expert on in the underlying case that not having beetles in the logs would be an industry standard to choose logs that are not infested by beetles. But that's unfortunately precisely what Mr. Downing did. Thank you, counsel. The case just argued is submitted, and we appreciate the helpful arguments from both of you. With that, we will be adjourned for this morning's session.
judges: Graber, Berzon, Ezra